IN THE DISTRICT COURT OF THE UNITED STATES

FOR THE DISTRICT OF SOUTH CAROLINA

GREENVILLE DIVISION

| | |
|---|---|
| Yetunde Adegbite,<br>                        Plaintiff,<br>vs.<br>Wal-Mart Stores East, L.P.,<br>                       Defendant. | Civil Action No. 6:05-2382-RBH-WMC<br><br>**REPORT OF MAGISTRATE JUDGE** |

This matter is before the court on the defendant's motion for summary judgment. The plaintiff, who is proceeding *pro se*, alleges in her complaint that she was "terminated unfairly" from unemployment by the defendant.

Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(A), and Local Rule 73.02(B)(2)(g), D.S.C., all pretrial matters in employment discrimination cases are referred to a United States Magistrate Judge for consideration.

The plaintiff originally filed her complaint in state magistrate's court, and the defendant removed this case to federal court based on its belief that the action was an attempt by the plaintiff to pursue the claim raised in her charge of discrimination filed with the Equal Employment Opportunity Commission ("EEOC"). In that EEOC charge, the plaintiff alleged that she had been treated less favorably than other employees and was discharged because of her national origin, Nigerian, in violation of Title VII of the Civil Rights Act of 1964, as amended (def. m.s.j., ex. 5). The defendant filed a motion for summary judgment on April 3, 2006. By order filed on April 4, 2006, pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), the plaintiff was advised of the dismissal procedure and the possible consequences if she failed to adequately respond to the motion. The plaintiff filed a response to the defendant's motion on April 27, 2006.

**FACTS PRESENTED**

The plaintiff was employed by Wal-Mart Store Number 640 in Greenville, South Carolina as an Overnight Cashier from June 17, 2003, until April 24, 2004. The plaintiff was scheduled to work from 11:00 p.m. on Wednesday, April 21, 2004, to 7:00 a.m. on Thursday, April 22, 2004. After taking a one-hour break from 3:01 a.m. until 4:01 a.m., the plaintiff asked Customer Service Manager Pamela Mayfield if she could take her last 15-minute break at 5:00 a.m. so that she could make a telephone call to Nigeria. Ms. Mayfield gave the plaintiff permission to do so. Associates remain on the clock during their 15-minute breaks.

The plaintiff started her 15-minute break at 5:00 a.m. When Ms. Mayfield received questions from other associates as to the plaintiff's whereabouts, she went to the parking lot at 5:43 a.m. to look for the plaintiff. She found the plaintiff asleep in her car. She tapped on the window of the car to wake her up, and the plaintiff returned to work. Ms. Mayfield notified the Store Manager, Jason Crace, of the plaintiff's conduct (def. m.s.j., ex. 1, Mayfield aff. ¶¶ 1-6). The plaintiff was terminated from employment by the Store Manager for theft of company time (def. m.s.j., ex. 1, 3).

Mary Griffin, the Personnel Manager for Store 640, submitted an affidavit in which she testified that eight associates had been terminated by that store since January 2003 for sleeping at work or similar theft of company time. Of those eight associates, six are black, one is white, and one (the plaintiff) is Nigerian. The defendant considers sleeping at work to be theft of company time, which is classified as "Gross Misconduct" and results in immediate termination. The defendant's Associate Handbook in effect at the time of the plaintiff's termination contains a "coaching" policy that states that theft of company time may result in the associate's immediate termination. The plaintiff signed an acknowledgment when she was hired by the defendant stating that she had read the handbook and fully understood its contents. The plaintiff and four of the other associates

2

terminated for theft of company time, including the aforementioned white associate, had no active coachings at the time of their terminations. Ms. Griffin was not aware of any associate who had not been terminated for sleeping at work, regardless of whether they had prior coachings (def. m.s.j., ex. 3, Mary Griffin aff. ¶¶ 1-5).

According to the plaintiff, she was unable to reach her party when she made the telephone call to Nigeria. She remained in her car and then fell asleep (def. m.s.j., ex. 2, pl. Rule 26(f) Report; *see also* def. m.s.j., ex. 5, pl. EEOC charge). Following her termination from employment, the plaintiff filed for unemployment benefits, which were denied (def. m.s.j., ex. 4). She did not appeal the decision of the Commission to the circuit court. On August 3, 2004, she filed a charge of discrimination with the EEOC and the South Carolina Human Affairs Commission ("SHAC") alleging discrimination based upon her national origin. A No Cause Determination was issued by SHAC on March 29, 2005, and a dismissal and notice of rights were issued by the EEOC on May 31, 2005 (def. m.s.j., ex. 5-7). This lawsuit followed.

## **APPLICABLE LAW**

Federal Rule of Civil Procedure 56(c) states, as to a party who has moved for summary judgment:

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.

Accordingly, to prevail on a motion for summary judgment, the movant must demonstrate that: (1) there is no genuine issue as to any material fact; and (2) that he is entitled to judgment as a matter of law. As to the first of these determinations, a fact is deemed "material" if proof of its existence or non-existence would affect disposition of the case

under applicable law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). An issue of material fact is "genuine" if the evidence offered is such that a reasonable jury might return a verdict for the non-movant. *Id.* at 257. In determining whether a genuine issue has been raised, the court must construe all inferences and ambiguities against the movant and in favor of the non-moving party. *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962).

The party seeking summary judgment shoulders the initial burden of demonstrating to the district court that there is no genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the movant has made this threshold demonstration, the non-moving party, to survive the motion for summary judgment, may not rest on the allegations averred in his pleadings. Rather, the non-moving party must demonstrate that specific, material facts exist which give rise to a genuine issue. *Id.* at 324. Under this standard, the existence of a mere scintilla of evidence in support of the plaintiff's position is insufficient to withstand the summary judgment motion. *Anderson*, 477 U.S. at 252. Likewise, conclusory allegations or denials, without more, are insufficient to preclude the granting of the summary judgment motion. *Ross v. Communications Satellite Corp.*, 759 F.2d 355, 365 (4th Cir. 1985). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson*, 477 U.S. at 248. Furthermore, Rule 56(e) provides in pertinent part:

> When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleadings, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party.

Fed.R.Civ.P. 56(e). Accordingly, when Rule 56(e) has shifted the burden of proof to the non-movant, he must produce existence of every element essential to his action that he bears the burden of adducing at a trial on the merits.

## ANALYSIS

The plaintiff claims in her complaint that she was "terminated unfairly." As set forth above, the plaintiff filed an EEOC charge in which she contended that she had suffered national origin discrimination. Under the burden-shifting framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-804 (1973), the allocation of proof is as follows: (1) the plaintiff-employee must first establish a *prima facie* case of discrimination; (2) if the plaintiff succeeds in proving the *prima facie* case, the burden shifts to the defendant-employer to articulate a legitimate non-discriminatory reason for its actions; and (3) if the defendant carries this burden, the plaintiff must then establish by a preponderance of the evidence that the reason articulated by the employer is a pretext to mask unlawful discrimination. *Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248, 252-53 (1981) (quoting *McDonnell Douglas,* 411 U.S. at 802-03).

In *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133 (2000), the Supreme Court reiterated that evidence of pretext, combined with the plaintiff's *prima facie* case, does not compel judgment for the plaintiff, because "[i]t is not enough ... to *dis*believe the employer; the factfinder must *believe* the plaintiff's explanation of intentional discrimination." *Id.* at 147 (quoting *St. Mary's Honor Ctr.*, 509 U.S. at 519) (emphasis in original). However, the Court also stated that, under the appropriate circumstances, "a plaintiff's *prima facie* case, combined with sufficient evidence to find that the employer's asserted justification is false, may permit the trier of fact to conclude that the employer unlawfully discriminated." *Id*. It is the plaintiff's burden to create an inference that the defendant's proffered reason is a pretext for intentional discrimination. *See id.* at 147-48.

Pretext analysis does not convert Title VII into a vehicle for challenging unfair – but nondiscriminatory – employment decisions. *Holder v. City of Raleigh*, 867 F.2d 823, 828 (4th Cir. 1989). Conclusory allegations, without more, are insufficient to preclude the granting of the defendant's summary judgment motion. *Ross*, 759 F.2d at 365.

To establish a *prima facie* case of national origin discrimination, the plaintiff must prove that (1) she is a member of a protected class, (2) she suffered an adverse employment action, (2) she was performing her job duties at a level that met her employer's legitimate expectations at the time of the adverse employment action, and (4) her position remained open or was filled by a similarly qualified applicant outside the protected class. *See Baqir v. Principi*, No. No. 04-2369, 2006 WL 146111, *7 (4th Cir. 2006) (citing *Hill v. Lockheed Martin Logistics Mgmt., Inc.*, 354 F.3d 277, 285 (4th Cir. 2004) (en banc)).

While the plaintiff can establish the first, second, and fourth elements of a *prima facie* case, she cannot and has not established that she was performing her job duties at a level that met the defendant's legitimate expectations. In fact, the plaintiff admits that she fell asleep on the job. Further, even if the plaintiff could establish a *prima facie* case, she has come forward with absolutely no evidence that the defendant's legitimate, non-discriminatory reason for terminating her employment for theft of company time was pretext for discrimination. She has not identified any similarly-situated associate who was not terminated for sleeping at work. Accordingly, the plaintiff's Title VII claim should be dismissed.

In her complaint, the plaintiff also alleges that she was "denied even my right to unemployment." As argued by the defendant, the plaintiff failed to properly appeal the denial of her unemployment claim. On July 9, 2004, the South Carolina Employment Security Commission affirmed the ruling of the administrative hearing officer finding that the plaintiff was discharged for cause and was thus disqualified from receiving benefits for 14 weeks (def. m.s.j., ex. 4). The plaintiff was informed of her right to appeal the decision to

6

the circuit court within 30 days of the date of the decision. However, the plaintiff failed to appeal, and filed this lawsuit almost a year later. As argued by the defendant, any claim regarding her unemployment benefits is untimely and not in compliance with the requirements of South Carolina Code Annotated Section 1-23-380.

## **CONCLUSION AND RECOMMENDATION**

Now, therefore, based on the foregoing, it is recommended that the defendant's motion for summary judgment be granted, as set forth herein.

s/William M. Catoe
United States Magistrate Judge

May 1, 2006

Greenville, South Carolina

7